UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KENNETH MYERS,

                               Petitioner,                              REPORT AND
                                                            RECOMMENDATION
        -against-
                                                            04 CV 4365 (ERK)(RML)
WILLIAM E. PHILLIPS,
Superintendent, Green Haven Correctional Facility,

                               Respondent.
-----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Petitioner pro se[1] brings this action pursuant to 28 U.S.C. § 2254 for a writ of

habeas corpus. By order dated May 23, 2008, the Honorable Edward R. Korman, United States

District Judge, referred this petition to me for a Report and Recommendation. Petitioner filed

supplemental materials on July 31, 2008. For the reasons set forth below, I respectfully

recommend that the petition be denied.

## PROCEDURAL HISTORY

        In 1997, the Kings County District Attorney charged petitioner Kenneth Myers

("petitioner" or "Myers") under Indictment Number 4231/96 with two counts of Murder in the

Second Degree (N.Y. Penal Law § 125.25 [2]), and one count each of Robbery in the First

Degree (N.Y. Penal Law § 160.15[1]), Robbery in the Second Degree (N.Y. Penal Law §

160.10[1]), Criminal Possession of Stolen Property in the Fifth Degree (N.Y. Penal Law §

165.40[1]), and Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal

Law § 220.09). (Affidavit of Sholom J. Twersky, Esq., sworn to Feb. 18, 2005 ("Twersky

---

[1] Petitioner initially filed his habeas corpus petition on October 8, 2004 via counsel. At a
conference on May 23, 2005, petitioner consented to his attorney's request to be relieved.

Aff."), ¶ 5.) This case arose on March 15, 1996 at approximately 1:45 a.m., when two police

officers in a marked patrol car noticed petitioner and his co-defendant, Warren Hamilton ("co-

defendant" or "Hamilton"), standing near a parked four-door passenger car on a deserted dead-

end commercial street in Brooklyn. (Id. ¶ 4; Transcript of Trial, dated Oct. 23 – Nov. 5, 1997

("Tr."), at 97, 182, 254-56); People v. Myers, 758 N.Y.S.2d 68, 70 (2d Dep't 2003). Petitioner,

wearing a t-shirt and gloves, was standing behind the car's open trunk, and Hamilton was

leaning into the open rear driver-side door. (Tr. at 101, 207, 240, 256-57.) The evidence at trial

established that, as Police Officers Mark Emanuele and Adrian Chaluisan pulled up in their

patrol car, Myers closed the trunk lid, approached the officers' vehicle, and exclaimed, "She's

dead." (Tr. at 104, 226, 260); see also People v. Myers, 758 N.Y.S.2d at 70. Following an on-

scene investigation, which revealed the dead body of Linda Green (the "decedent" or "victim")

in the front passenger seat of the car, the officers arrested and charged the two men. (Twersky

Aff. ¶¶ 4-5); People v. Myers, 758 N.Y.S.2d at 70. The decedent was the car's owner (Tr. at

240), and she had been strangled from behind, most likely with the seat belt. (Tr. at 636-37, 639,

650, 661-62); People v. Myers, 758 N.Y.S.2d at 70.

Prior to trial, petitioner moved to suppress statements he had made to law

enforcement officers on the grounds that they were the product of an illegal arrest and were not

knowingly and voluntarily made.[2] Petitioner also moved to suppress physical evidence found on

---

[2] Although petitioner initially told the police that he and Hamilton had happened upon
the parked car containing Linda Green's body, and that he had opened the trunk because he was
being "nosey" (see Tr. at 109, 136, 500-01), he later changed his story. At the precinct, Myers
told the officers that he had supplied Linda Green with illegal drugs, and that she owed him
money. (See Tr. at 762-63.) According to Myers's statement, Green had called him and agreed
to meet him near his house. He and Hamilton then met her, drove around in her car, with Myers
(continued...)

his person and in the car at the scene of the crime, on the ground that they were the fruits of an unlawful arrest and search. After a lengthy pretrial suppression hearing,[3] the court denied petitioner's motions. (See Decision and Order, dated Nov. 17, 1997.)

On November 5, 1997, after a trial in which he and his co-defendant were tried with separate juries, petitioner was convicted of Murder in the Second Degree, Robbery in the First Degree, and Criminal Possession of a Controlled Substance in the Fourth Degree.[4] (Twersky Aff. ¶ 6; Tr. at 1185.) On November 19, 1997, the court sentenced him to concurrent, indeterminate prison terms of twenty-five years to life for the murder conviction, twelve and a half to twenty-five years for the robbery conviction, and two and one-quarter to four and a half years for the conviction of criminal possession of a controlled substance. (Twersky Aff. ¶ 7.)

Petitioner appealed his conviction to the Appellate Division, Second Department. In his appeal, petitioner argued that (1) the warrantless search of his cigarette box, which contained a glassine envelope of cocaine, violated the Fourth Amendment; (2) the warrantless search of his jacket, which police found in the back seat of the car, and which contained the

---

[2](...continued)
in the front seat and Hamilton in the back, and eventually parked on West 13th Street near Avenue Z. Myers told the officers that he then exited the car and went to snort cocaine in the light of the open trunk, which Green had opened for him from inside the passenger compartment. He stated that, as he was leaving the car, he saw Hamilton cutting the seat belts. He said that he did not hear or see anything that happened in the car, but that Hamilton exited the car a few minutes later, whereupon Myers discovered that Green was dead. (See Tr. at 764-68, 776.)

[3] As explained in more detail infra, the court reopened the suppression hearing during the trial to take testimony from Officer Emanuele regarding a statement Myers allegedly made to him at the crime scene, but which had not been addressed during the pretrial hearing. (See Decision and Order, dated Nov. 17, 1997, at 1; Tr. at 117-25.)

[4] The court did not submit the charge of Criminal Possession of Stolen Property to the jury. (See Tr. at 1088, 1090.)

victim's wallet and beeper, as well as additional cocaine, was not justified as a search incident to arrest or under the automobile exception to the warrant requirement; (3) his pre-<u>Miranda</u> statements should have been suppressed; (4) the court's jury charge on "recent and exclusive possession" was improper; (5) the court's refusal to admit his co-defendant's videotaped statement into evidence violated his rights to a fair trial and to present a defense; and (6) the court's admission of petitioner's previous uncharged drug sales was erroneous.  (Brief for Appellant – Defendant, dated June 2002; Twersky Aff. ¶ 8.)  By decision and order dated March 10, 2003, the Appellate Division affirmed the judgment of conviction.  <u>People v. Myers</u>, 758 N.Y.S.2d 68 (2d Dep't 2003).  The Appellate Division held that the trial court had properly denied suppression at the pretrial hearings because petitioner had no legitimate expectation of privacy in the jacket left in the car.  <u>Id.</u> at 71.  The court also found that, because the police had probable cause to search the vehicle and the jacket, the search was justified under the automobile exception to the warrant requirement.  <u>Id.</u> at 72.  It found Myers's remaining contentions either unpreserved for appellate review or without merit.  <u>Id.</u> at 74.  On July 31, 2003, the Court of Appeals denied petitioner's application for leave to appeal.  <u>People v. Myers</u>, 796 N.E.2d 487 (N.Y.  2003).

  Petitioner filed his habeas corpus petition on October 8, 2004, and he filed a supplemental petition on October 12, 2004.[5]  In his petition, Myers raised several grounds for relief.  He contended that: (1) he was denied effective assistance of appellate counsel because his

_____

 [5] Petitioner filed a Memorandum of Law and Declaration in support of his habeas petition on May 31, 2007.  Following the disclosure to petitioner of the Minutes containing the testimony of five grand jury witnesses, he was permitted to submit a Supplemental Declaration in support of his petition on July 31, 2008.  This court's analysis will reflect petitioner's arguments as presented in the July 31, 2008 Supplemental Declaration.

attorneys[6] (a) erred in not raising a claim of ineffective assistance of trial counsel, (b) incorrectly argued the law, and (c) did not investigate the facts of his case; (2) the trial court's erroneous jury instructions denied him due process; and (3) the court's refusal to allow certain evidence concerning his co-defendant denied Myers his constitutional right to a fair trial.  (See Petition, dated Oct. 7, 2004; Supplemental Petition for Writ of Habeas Corpus, dated July 31, 2008 ("Myers Supp. Pet."), at 6-17).  By order dated February 28, 2005, Judge Korman directed petitioner to exhaust his state court remedies.

On November 28, 2005, petitioner filed a pro se motion for a writ of error coram nobis in the Appellate Division.  (See Coram Nobis Petition, dated Nov. 28, 2005 ("Coram Nobis Pet.")).  In his coram nobis submissions, petitioner argued that he was denied the effective assistance of appellate counsel.  (E.g., Coram Nobis Pet. at 2-5.)  The Appellate Division denied the petition on April 11, 2006.  People v. Myers, 811 N.Y.S.2d 920 (2d Dep't 2006).  On June 30, 2006, the Court of Appeals denied petitioner's application for leave to appeal.  People v. Myers, 853 N.E.2d 256 (N.Y. 2006).

Petitioner filed his Supplemental Declaration in support of his habeas corpus petition on July 31, 2008.  (See Myers Supp. Pet.)  In addition, petitioner submitted a supporting Memorandum of Law at that time.  (See Supplemental Memorandum of Law in Support of Kenneth Myers' Petition for a Writ of Habeas Corpus, dated July 28, 2008 ("Myers Mem.").)  Petitioner raises the same grounds for habeas relief articulated in his previous petition: that (1) he was denied effective assistance of appellate counsel because his attorneys (a) erred in not

---

[6] On appeal, Myers was represented by three attorneys at the same law firm.  (See Brief for Appellant – Defendant, dated June 2002.)

-5-

claiming ineffective assistance of trial counsel, (b) did not investigate the facts of his case, and

(c) incorrectly argued the law; (2) the trial court's erroneous jury instructions denied him due

process; and (3) the court's refusal to allow certain evidence pertaining to his co-defendant

denied Myers his constitutional right to a fair trial. (Id. at 6-17).

## DISCUSSION

A. Jurisdictional Requirements

A petitioner seeking habeas corpus review must satisfy certain jurisdictional

requirements. The first line of inquiry is whether the petition is barred by the applicable statute

of limitations. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> [a] 1-year period of limitation shall apply to an application for a
> writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court. The limitation period shall run from the
> latest of – (A) the date on which judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review.

28 U.S.C. § 2244(d)(1); see also Lindh v. Murphy, 521 U.S. 320, 327 (1997).

Myers appealed the judgment of conviction against him to the Appellate Division,

Second Department, which denied his claims on May 10, 2003. The New York Court of

Appeals then denied leave to appeal on July 31, 2003. The one-year time limit thus began to

accrue on October 29, 2003, at the conclusion of the ninety days during which petitioner could

have sought certiorari to the United States Supreme Court, see Sup. Ct. R. 13; Fernandez v.

Artuz, 402 F.3d 111, 112 (2d Cir. 2005), and ended on October 29, 2004. Petitioner filed this

habeas petition on October 8, 2004, within the one-year statutory period, and therefore satisfied

the requirements of § 2244(d).

A petitioner seeking to invoke habeas corpus review must also be in custody

pursuant to a state court judgment. 28 U.S.C. § 2254(a). The custody requirement is met if the petitioner is presently serving a sentence. Hensley v. Mun. Court, 411 U.S. 345, 350-53 (1973). Myers meets this requirement because he is currently serving his prison sentence. (Supp. Pet. at 17.)

### B. Exhaustion of State Court Remedies and Procedural Bar

Before addressing the merits of a habeas corpus petition, the court must determine whether the petitioner has exhausted his state remedies. See 28 U.S.C. §§ 2254(b) – (c); Picard v. Connor, 404 U.S. 270, 274 (1971). This requirement is based on considerations of comity between federal and state courts and is meant to ensure that the state courts have an opportunity to consider and correct any violation of their prisoners' federal constitutional rights. See Picard, 404 U.S. at 275; Daye v. Attorney Gen., 696 F.2d 186,191 (2d Cir. 1982) (en banc); Coleman v. Greiner, No. 97 CV 2409, 1999 WL 320812, at *2 (E.D.N.Y. May 19, 1999). To satisfy this exhaustion requirement, the petitioner must fairly have presented at each available level of the state courts the same federal constitutional claims raised in his or her petition to the federal court. See Picard, 404 U.S. at 275-76; Klein v. Harris, 667 F.2d 274, 282-83 (2d Cir. 1981); Coleman, 1999 WL 320812, at *2.

As explained above, Myers's petition raises three grounds for relief. He argues that: (1) his appellate counsel was ineffective on several grounds; (2) the jury instructions were erroneous; and (3) the trial court erred by refusing to allow certain evidence pertaining to his co-defendant. Petitioner raised his first claim, for ineffective assistance of appellate counsel, only in his petition to the Appellate Division for a writ of error coram nobis (see generally Coram Nobis Pet.), and the Court of Appeals denied his application for leave to appeal. People v.

Myers, 853 N.E.2d 256 (N.Y. 2006). Because this is the proper means to raise such a claim, this claim has been properly exhausted. See Mathis v. Hood, 851 F.2d 612, 614-15 (2d Cir. 1988); Figueroa v. Portuondo, 96 F. Supp. 2d 256 (S.D.N.Y. 1999); People v. Bachert, 509 N.E.2d 318 (N.Y. 1987).

  Petitioner raised the second and third claims in his direct appeal. The Appellate Division found these contentions "either unpreserved for appellate review or without merit," People v. Myers, 758 N.Y.S.2d at 74, and the Court of Appeals denied leave to appeal without comment, see People v. Myers, 796 N.E.2d 487. Under the procedural default doctrine, a federal habeas court generally may not review a state court's denial of a state prisoner's constitutional claim if the state court's decision rested on an independent and adequate state procedural default. See Coleman v.Thompson, 501 U.S. 722, 729 (1991); Epps v. Comm'r of Corr. Servs., 13 F.3d 615, 617 (2d Cir. 1994). Under this doctrine, a procedural default of a claim in state court cannot bar a federal court from reviewing a habeas corpus petition "unless the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 498 U.S. 225, 262-63 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). A state court holding in the alternative, finding that a claim is either procedurally barred or meritless, has not made not a "clear and express" statement that its judgment rests on a state procedural ground. See Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992). As a consequence, I find Myers to have properly exhausted his state remedies.

C. Petitioner's Claims

Under AEDPA,

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of federal law. See id. § 2254(a). Federal habeas corpus relief does not lie for errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). The writ of habeas corpus is an "extraordinary remedy," Brecht v. Abrahamson, 507 U.S. 619, 633 (1993), and "[f]ederal courts are not forums in which to relitigate state trials." Barefoot v. Estelle, 463 U.S. 880, 887 (1983), overruled on other grounds, Lindh v. Murphy, 521 U.S. 320 (1997). As the Supreme Court has stated, "it hardly bears repeating that 'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'" Brecht, 507 U.S. at 634 (quoting United States v. Frady, 456 U.S. 152, 165 (1982)). Direct review is the principal avenue for challenging a conviction, see Brecht, 507 U.S. at 633, and "[w]hen the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence," Barefoot, 463 U.S. at 887. With these principles in mind, I will address each of petitioner's claims in turn.

1. Ineffective Assistance of Appellate Counsel

Under clearly established Supreme Court precedent, the benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984); see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (recognizing the Strickland test as "clearly established" law for purposes of AEDPA). A petitioner claiming ineffective assistance of counsel must demonstrate that: (1) his or her counsel's performance was deficient as measured by objective professional standards, and (2) this deficiency prejudiced the defense. See Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000); see also McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999). A petitioner must demonstrate both elements before it can be said that "the conviction resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

With regard to the first element, the Supreme Court has stated that constitutionally deficient performance "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. The performance inquiry is highly contextual; it is concerned with whether the attorney's actions were objectively reasonable considering all the circumstances. See Purdy, 208 F.3d at 44. Counsel's challenged conduct must be evaluated in light of the facts of the particular case and from the perspective of the attorney at the time of representation. See Wiggins v. Smith, 539 U.S. 510, 523 (2003); see also Ocampo v. United States, No. 99 CV 6727, 2004 WL 611959, at *4 (E.D.N.Y. Mar. 22, 2004). In addition, there is a strong presumption that an attorney's performance was reasonable, and courts are highly deferential to the decisions

made by an attorney during representation.  See Strickland, 466 U.S. at 689; see also Sepulveda v. United States, No. 95 CV 2569, 1998 WL 355182, at *2 (E.D.N.Y. June 29, 1998) ("Although the Supreme Court has not established specific guidelines for evaluating the reasonableness of counsel's actions, courts should apply a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'") (quoting Strickland, 466 U.S. at 690).  A convicted defendant making a claim of ineffective assistance must overcome this presumption by identifying the attorney's specific acts or omissions that fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687.

Under the second prong, petitioner must establish that there is "a reasonable probability that, but for counsels's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  To obtain federal habeas relief on a claim of ineffective assistance that was previously rejected by a state court, a petitioner must do more than convince the federal habeas court that, in its independent judgment, the state court applied Strickland incorrectly.  Rather, petitioner must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.  28 U.S.C. § 2254(d)(1); see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  To be "objectively unreasonable," a state court's application of clearly established federal law must involve "[s]ome increment of incorrectness beyond error."  Sellan, 261 F.3d at 315 (internal quotation marks omitted).

In addition, the Supreme Court has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations

on investigations." Strickland, 466 U.S. at 690-91; see also Engle v. Isaac, 456 U.S. 107, 134

(1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only

a fair trial and a competent attorney.  It does not insure that defense counsel will recognize and

raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir.

1998) ("We are also instructed, when reviewing decisions by counsel, not to 'second-guess

reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable"

claim on appeal.'" (quoting Jones v. Barnes, 463 U.S. 745, 754 (1983))).  In other words, an

appellate attorney's performance will not be deemed unreasonable merely because he or she

failed to "advance every nonfrivolous argument."  Mayo v. Henderson, 13 F. 3d 528, 533 (2d

Cir. 1994).  Rather, counsel may focus on key issues and "winnow out weaker arguments."

Jones, 463 U.S. at 751.  In essence, in order for petitioner to establish constitutionally inadequate

performance, he must show that his appellate counsel omitted "significant and obvious issues

while pursuing issues that were clearly and significantly weaker."  Mayo, 13 F.3d at 533.

Petitioner claims that he was denied effective assistance of appellate counsel

because, on appeal, his counsel: (1) erred in not raising a claim of ineffective assistance of trial

counsel, (2) did not properly investigate the facts of his case, and (3) failed to argue that there

was insufficient evidence to support the verdict.  I will address each of these arguments

independently.

a. Appellate Counsel's Alleged Ineffectiveness for Failure to
   Raise a Claim that Trial Counsel Provided Ineffective Assistance

Petitioner first argues that his trial counsel was ineffective in attempting to

suppress the evidence of stolen property found in petitioner's jacket.  (Myers Mem. at 7.)

Petitioner labels his trial counsel's errors of law "mind-boggling" and his appellate counsel's

failure to raise an ineffective assistance of counsel claim based on these mistakes "equally mind-boggling." Id. Petitioner contends that this "ignorance of the law . . . run[s] afoul of the objective standard of reasonableness." Id. (citing cases).

The evidence at trial included the testimony of the police officers and detectives who investigated the crime scene and claimed to have found property belonging to the decedent and a substantial amount of cocaine inside the pocket of petitioner's jacket, which was discovered in the back seat of the car. (See Tr. at 149-53.) At the pretrial suppression hearing, defense counsel argued that Myers had a privacy interest in the jacket because he had left it in the car before the officers' arrival, and that even if the police had a right to recover the jacket, they were not permitted to search its pockets without a warrant. (See Suppression Hearing Minutes, dated Oct. 20-21, 1997 ("H."), at 242, 244.) The trial court found the search justified under the automobile exception to the warrant requirement and as a search incident to arrest. (H. at 360-61; Decision and Order, dated Nov. 17, 1997, at 8.) The court held that, once Hamilton had admitted to the police that he and Myers had recently used cocaine inside the car (see H. at 37-38, 40), and after the police had discovered cocaine and items with narcotics residue on Myers's person, the officers had probable cause to arrest both men for criminal possession of a controlled substance and to search the automobile and everything in it for contraband, without a warrant. (Decision and Order, dated Nov. 17, 1997, at 8.)

Petitioner does not challenge the court's decision. Rather, he argues that his trial attorney should not have made this erroneous argument in the first place, and that his appellate counsel should have raised a claim of ineffective assistance based on his trial counsel's decision to advance this weak position. (See Myers Mem. at 9-12.) However, trial counsel made this

argument in an effort to suppress evidence that cut harshly against petitioner.  Myers's main alibi, that he was outside the car at the time of the murder and robbery, would have been much stronger had defense counsel been able to suppress evidence that his jacket contained the victim's property, and any reasonable attorney would have sought suppression of that evidence on any colorable ground.  Indeed, this court is hard-pressed to understand how making this ultimately unsuccessful argument in a pretrial suppression hearing could have prejudiced Myers's case.  Appellate counsel did not provide ineffective assistance by raising similar issues on appeal or by failing to assert a claim of ineffective assistance of trial counsel.

Petitioner also argues that his trial counsel made errors of omission by failing to articulate a violation of Terry v. Ohio, 392 U.S. 1 (1968), or to argue that Officer Emanuele's suppression testimony was incredible as a matter of law, and that his appellate counsel should have asserted that trial counsel was ineffective on these grounds.  (See Myers Mem. at 2, 12-15.) As for the Terry argument, it is well established that police investigating suspicious behavior may stop, briefly detain, and frisk a person on a street, without having to meet the Fourth Amendment's probable cause requirement, as long as the stop is justified by a reasonable and articulable suspicion of criminal activity.  See Terry v. Ohio, 392 U.S. at 20-22; see also United States v. Newton, 369 F.3d 659, 673 (2d Cir. 2004) ("Terry is an 'exception' to the Fourth Amendment probable cause requirement.").  Here, the evidence demonstrated that the police approached Myers and Hamilton in a marked patrol car at 1:45 a.m. on a deserted dead-end street and observed Myers, wearing a t-shirt and gloves on a cold night, looking inside a lone parked car's open trunk while his companion leaned into the rear driver's side open door.  (See Tr. at 97, 101, 182, 207, 240, 254-57.)  Upon noticing the patrol car, Myers spontaneously closed

the trunk lid, approached the officers, and said, "She's dead." (Tr. at 104, 226, 260; see also H. at 7-8.) It is beyond question that, at that juncture, the police reasonably suspected criminal activity and therefore were justified in conducting a Terry stop. Myers's trial counsel thus had no basis for challenging the stop, and Myers's appellate counsel had no basis for asserting that trial counsel was ineffective for failing to do so.

With respect to the credibility of Officer Emanuele's suppression testimony, it is true that the hearing court found portions of Officer Emanuele's testimony "somewhat confused." (See Decision and Order, dated Nov. 17, 1997, at 2 n.2.) The court attributed this confusion "not to prevarication or to an uncertain memory, but to anxiety" and noted that this "relatively inexperienced officer appeared to be genuinely flustered on both direct and cross examination." (Id.) Nonetheless, there is nothing to indicate that Officer Emanuele's testimony rose to the level of being incredible as a matter of law. See Toland v. Walsh, No. 9:04-CV-0773, 2008 WL 65583, at *17 (N.D.N.Y. Jan. 4, 2008) ("[T]he trial testimony of a witness may only properly be considered incredible as a matter of law 'where the witness testifies as to facts that [he or she] could not have possibly observed or events that could not have occurred under the laws of nature.'" (quoting Simpson v. Portuondo, No. 01 Civ. 8744, 2002 WL 31045862, at *9 (S.D.N.Y June 4, 2002))). Petitioner does not argue that defense counsel was denied the opportunity, or did not use the opportunity, to cross-examine all of the police officers and detectives at length or to highlight inconsistencies in the testimony on summation. Moreover, defense counsel moved for a mistrial after Officer Emanuele testified to a fact that had not been elicited at the pre-trial suppression hearing. While the court denied defense counsel's motion, it did agree to reopen the suppression hearing. (See Tr. at 109, 116-17.)

In sum, petitioner demonstrates neither that his appellate counsel's decision not to pursue a claim of ineffective assistance of trial counsel fell below an objective standard of reasonableness, nor that there was a reasonable probability that such a claim would have succeeded. This court notes that Myers's trial attorney was generally a zealous and effective advocate throughout Myers's criminal trial. I have reviewed the trial transcript in its entirety, and I find that defense counsel vigorously cross-examined the prosecution's witnesses, pressed for the exclusion of adverse evidence, and argued cogently in summation on behalf of his client's innocence. Myers therefore cannot show that his trial counsel or appellate counsel provided ineffective assistance or that the Appellate Division applied <u>Strickland</u> in an objectively unreasonable manner, and I respectfully recommend that this claim be denied.

    b.  Appellate Counsel's Alleged Failure to Investigate
       <u>the Factual and Legal Background of Petitioner's Case</u>

Petitioner also argues that his appellate counsel provided ineffective assistance by failing to conduct a proper investigation concerning a set of keys found at the crime scene. He contends that an adequate investigation would have unearthed additional evidence to exculpate him. Some background concerning this claim is necessary for context:

As stated earlier, when the police officers first pulled up alongside Myers and Hamilton, Myers was standing behind the open trunk of the car. (Tr. at 101.) Testimony from both officers suggests that, upon seeing the patrol car, Myers slammed the trunk lid shut and placed on it a set of keys attached to a red cord. (Tr. at 101, 134-35, 176, 222, 257.) According to Officer Emanuele, Myers explained that he had taken the keys from the car's ignition (Tr. at 109), although Myers later told Detectives Turner and Cermenello that he had found the keys in the lock of the open trunk. (Tr. at 809, 811.) For much of the trial there was considerable

uncertainty as to what happened next to the keys (see, e.g., Tr. at 214-15, 309, 370, 376-77, 393, 472-73) and whether the ignition key to the decedent's car had been removed from that red cord.

The keys were discussed frequently at trial, for several reasons. First, the prosecution argued that the keys belonged to the decedent and were among several items Myers had stolen from her. Second, Hamilton's attorney argued that the red cord to which the keys were attached could have been used to strangle the victim, implying that Myers's possession of the keys made him a more likely suspect for the decedent's murder than Hamilton.[7] (See Tr. at 192, 371.) Finally, during his cross-examination of the police officers and detectives, Myers's attorney seized on the fact that the red cord was submitted into evidence with only two keys attached to it, neither of which was a car key, although it had originally contained three keys. (See Tr. at 101, 453-54, 463, 543-44, 582.) Myers's attorney questioned the officers at some length as to who had removed one key and which officers had been responsible for its inventory. (See, e.g., Tr. at 543-44, 552.) Several of these witnesses could not provide helpful, consistent answers concerning the chain of custody, and until Detective Cermenello testified, no one could locate the missing ignition key.[8] (See Tr. at 583-84, 565, 791-92). In short, there was some confusion at trial concerning the police department's protocol in handling the keys and other items, and Myers's trial counsel capitalized on that confusion in an attempt to attack the officers' credibility and cast doubt on the claim that Myers had possessed the keys or any of Green's other

---

[7] The Medical Examiner undermined this theory by testifying that the red cord was not consistent with the victim's injuries. (See Tr. at 651, 699.)

[8] Detective Cermenello explained that the ignition key was removed from the red cord and used to start the vehicle, which was inspected at the Sixth Precinct and then taken to a pound in Whitestone, Queens. (Tr. at 792; see also Tr. at 805-08.)

property.  (See, e.g., Tr. at 910-12, 916.)

Petitioner now asserts that the red cord contained the keys to his apartment in the Marlboro Housing Project in Brooklyn, New York.[9]  (Myers Mem. at 16.)  He argues that, had his attorney hired a private investigator to prove this, he would have had stronger evidence to support his defense, which was that Linda Green had opened the trunk for Myers from inside the passenger compartment, and therefore was still alive when Myers exited the car.  (Myers Mem. at 16-18.)  According to this theory, Myers was unable to see Hamilton murder the decedent because the trunk of the car was open, blocking his view into the back seat.  (See Tr. at 897-98, 928.)  Moreover, if the keys belonged to Myers, then they obviously would not constitute stolen property.

To support the theory that Hamilton committed the murder while Myers stood behind the open trunk, Myers's trial attorney pressed the officers for details about the car key, trying to instill doubt that Myers could have possessed it.  (See, e.g., Tr. at 543-44.)  Following the cross-examinations, trial counsel moved for an adverse inference charge with respect to testimony about the keys.  (Tr. at 831-32).  The court denied the motion, finding that the missing key was "not relevant to whether or not he did commit the crime."  (Tr. at 832.)

Importantly, Myers does not contend that he ever told his trial counsel or appellate counsel that the keys attached to the red cord were his apartment keys.  During an exhaustive set

_____

[9]  In his coram nobis petition, Myers did not allege specifically that the keys belonged to him.  Instead, he argued that "it can never be known for certain what results counsel's investigation might have uncovered," but that "there was a reasonable likelihood in this case that effective investigation tactics would have benefited [sic] the defense."  (Memorandum of Law in Support of Coram Nobis Petition, dated Nov. 28, 2005, at 19.)  Regardless, the argument fails for the reasons explained.

of cross-examinations, there was never any indication that defense counsel had considered that possibility. That petitioner does not claim to have raised this issue with either his trial attorney or his appellate counsel essentially ends the inquiry into whether he received ineffective assistance on this ground. Without being informed by petitioner, there was no reason for Myers's attorney to have assumed that the keys were to Myers's apartment. Indeed, as his trial counsel acknowledged (see Tr. at 929), Myers himself gave inconsistent statements about the keys, first telling police that he took the keys from the car's ignition (see Tr. at 109), then saying that he found the keys in the trunk lock (Tr. at 809, 811), and finally claiming that the victim opened the trunk from inside the passenger compartment (Tr. at 809-10). Nevertheless, defense counsel used the uncertainties presented by the keys to conduct zealous cross-examinations, move for a mistrial (Tr. at 111, 125), and argue in summation that there was insufficient proof to convict Myers (Tr. at 927-32). Moreover, even if it could be proved conclusively that the keys on the red cord belonged to Myers and not to the victim, there is no reasonable probability that the outcome would have been different, as the prosecution presented substantial evidence of petitioner's guilt. I therefore respectfully recommend that this claim be denied.

### c. Appellate Counsel's Failure to Raise a Claim of Insufficient Evidence

Finally, petitioner argues that his appellate counsel unreasonably failed to raise an evidentiary sufficiency claim. (See Myers Mem. at 19-25.) As explained, an appellate attorney is not required to advance every nonfrivolous argument urged by the appellant. Jones v. Barnes, 463 U.S. 745, 750 (1983). In order for a petitioner to establish constitutionally inadequate performance, he must show that his appellate counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. Id.

To prove a claim of evidentiary insufficiency, a petitioner must demonstrate that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002); see also Herrera v. Collins, 506 U.S. 390, 401 (1993).  Myers's appellate counsel could not have met that standard in this case, as Myers was indisputably one of two people present at a remote location where the victim's body was discovered, and the prosecution put forth substantial circumstantial evidence of his guilt, including Myers's numerous inconsistent and untruthful statements to the police.  As he did during the trial, petitioner seeks to deflect culpability by arguing that the full guilt lies with Hamilton, and that the evidence presented at trial merely places him at the scene of the crime, without demonstrating his direct involvement in the decedent's murder.  (Myers Mem. at 19-25.)  In doing so, petitioner largely rehashes the alibi argued unsuccessfully at trial.  In sum, petitioner has not met his burden of demonstrating that his appellate counsel unreasonably failed to assert a claim of insufficient evidence, and I therefore recommend that this claim be denied.

### 2.  Jury Charge on Recent, Exclusive Possession of Stolen Property

Petitioner argues that the trial court's jury instructions denied him due process of law by implying that his possession of the victim's property was an established fact.  (See Myers Mem. at 3, 25-29).  In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its totality.  Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Id. at 147.  To sustain a habeas claim pertaining to improper jury instructions, the petitioner must show a violation of both state and federal law.  See

Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985).  In Casillas, the Second Circuit explained:

> In order to obtain a writ of habeas corpus in federal court on the
> ground of error in a state court's instructions to the jury on matters
> of state law, the petitioner must show not only that the instruction
> misstated state law but also that the error violated a right guaranteed
> to him by federal law.

Id.

Petitioner objects to the trial court's instruction on recent and exclusive

possession, known as a Galbo charge, which permits jurors to infer, solely from a defendant's

unexplained or falsely explained possession of the fruits of a crime, his or her culpability for the

offense in which those fruits were obtained.  See People v. Galbo, 112 N.E. 1041 (N.Y. 1916);

see also People v. Baskerville, 457 N.E.2d 752, 756-57 (N.Y. 1983).

Petitioner objects to the following passage, which begins the court's Galbo charge:

> [I]n order to establish some or all of the necessary elements of these
> crimes, the People rely in addition to the other evidence before you
> on the proof that within two hours of the commission of the robbery
> and . . . felony murder, the defendant Ken Myers was found there to
> be in possession of certain property allegedly stolen from Linda
> Green on March 15, 1996.

(Tr. at 1100.)  According to Myers, this passage assumes that his possession of the victim's

property was a foregone conclusion, even though he disputed the prosecution's claim that the

items were found in his jacket.  At trial, Myers's counsel seized on inconsistencies in the

testimony of the police officers and detectives regarding the vouchering of property found at the

crime scene, and argued in summation that there was insufficient evidence to prove that the

decedent's property was actually found in Myers's jacket.[10]  (See Tr. at 920-21.)

---

[10]  It bears noting that this argument contrasts with Myers's initial statement to Detective
Turner that he found the decedent's wallet on the ground next to the car and put it in his jacket

(continued...)

However, the court's instruction made it sufficiently clear that petitioner's possession of the property was a question of fact for the jury. First, the court's charge, read in its entirety, stressed that the jury was the sole fact finder (Tr. at 1057), stated that it was the jurors' duty alone to assess witness credibility (Tr. at 1071-77, 1103), reminded the jurors that petitioner was presumed innocent and had no burden to prove or disprove anything (Tr. at 1059, 1083, 1107), and repeatedly reiterated that the prosecution bore the burden of proving every element of each crime with which petitioner was charged beyond a reasonable doubt (Tr. at 1060-61, 1093, 1097-99, 1101, 1104, 1121, 1123).

Second, the court highlighted the permissive nature of the inference (Tr. at 1100), instructing the jury that before it could draw an inference of guilty possession, the People were required to establish beyond a reasonable doubt that: (1) the property was in fact stolen from the victim, (2) the property was in petitioner's exclusive possession, (3) the possession was recent, and (4) the possession was unexplained or falsely explained (Tr. at 1101-03). At the conclusion of this charge, the court summarized:

> If you find that the People have failed to prove to your satisfaction beyond a reasonable doubt that the property found in the defendant's possession was in fact stolen property and that such possession by the defendant was exclusive, recent and unexplained as I defined those terms to you, you must not form any guilty inferences as to the crime of felony murder or robbery from the defendant's possession.
>
> On the other hand, only if the proof satisfies you beyond a reasonable doubt that the defendant in fact possessed stolen property and that such possession was exclusive, recent and unexplained, are you then permitted to draw the inference of guilty

---

possession as to the crime of felony murder and robbery.

(Tr. at 1104.)  In other words, the instructions in their totality properly conveyed the elements of

the crime that the People were required to prove beyond a reasonable doubt.  Thus, viewed in

context, the charge was not misleading and did not remove a disputed issue from the jury's

consideration.

Myers also objects to this passage because the court did not offer a lesser crime as

an alternative.  He contends that the jurors should have been instructed that they could find him

guilty of criminal possession of stolen property without finding him guilty of robbery and murder.

(See Myers Mem. at 28.)

This instruction did not misstate the law or violate Myers's constitutional rights.

The court had specifically noted toward the beginning of its instructions on exclusive and recent

possession that finding the defendant in possession would not necessitate a conviction:

> Under our law, when the defendant is proved to be in an
> unexplained and exclusive possession of recently stolen property,
> such proof is a circumstance which a jury may consider, but is not
> required to draw an inference, that is, such possession was guilty
> possession.

(Tr. at 1100-01).   This part of the instruction, given only minutes before the part of the

instruction Myers is contesting, made it amply clear to the jurors that they were not required to

find Myers guilty of robbery or murder simply because he possessed the allegedly stolen

property.

The cases Myers cites are not factually analogous.  In each of those cases, the

amount of time that had elapsed after the original crime left open the realistic possibility that the

defendant was in possession of something he or she did not steal.  See People v. Batten, 290

N.E.2d 148 (N.Y. 1972) (holding that trial court committed reversible error by instructing jury on recent and exclusive possession, without charging on criminal possession of stolen property, where proceeds of robbery were recovered from defendant's apartment, concealed in a suitcase); People v. Robins, 509 N.Y.S.2d 889 (2d Dep't 1986) (reversing conviction and ordering new trial where court gave recent and exclusive possession charge in trial of defendant found with stolen property two weeks after the robbery); People v. Zada, 428 N.Y.S.2d 480 (2d Dep't 1980) (reversing conviction for murder and robbery because of court's erroneous instruction that the jury could infer defendant's guilt from evidence that he possessed and sold the victim's ring). That is not this case here, as Myers was apprehended at the scene of the crime. See People v. Howard, 459 N.E.2d 842, 843 (N.Y. 1983) (explaining that there was "no need to charge with respect to the crime of possession of stolen property, there being no reasonable view of the evidence under which defendant was guilty only of that crime.").

The trial court properly instructed the jury on the elements of the crimes with which Myers was charged. Therefore, the Appellate Division was neither incorrect nor unreasonable in denying petitioner relief on his claim that the trial court's jury instructions denied him due process of law.

3. Preclusion of Videotape Evidence

Petitioner argues that the trial court erroneously denied his request to introduce into evidence a videotaped statement from his co-defendant, Warren Hamilton, taken when Hamilton was in police custody.[11] (Myers Pet. at 29-32). Petitioner claims that the videotape

_____

[11] The videotape was admitted into evidence against Hamilton and shown to Hamilton's jury only. (See Tr. at 613-15.)

includes Hamilton's admission that he was originally seated behind the decedent when they were driving.  (Myers Mem. at 29; <u>see also</u> Tr. at 187, 607.)  Petitioner argues that, since the decedent was strangled from behind, this evidence is essential to his defense.  Perhaps more significantly, the videotape allegedly includes Hamilton's admission to cutting the seatbelts likely used in the murder.  (Myers Mem. at 29; <u>see also</u> Tr. at 607-08.)

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).  "[A]n essential component of procedural fairness is an opportunity to be heard."  <u>Id.</u>; <u>accord</u>, <u>e.g.</u>, <u>Cruz v. Greiner</u>, 99 Civ. 7939, 1999 WL 1043961, at *32 (S.D.N.Y. Nov. 17, 1999); <u>Gillette v. Greiner</u>, 76 F. Supp. 2d 363, 373 (S.D.N.Y. 1999).

However, the Supreme Court has also acknowledged "our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."  <u>Crane</u>, 476 U.S. at 689-90.  As the Court has explained:

> In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence. . . . [T]he Constitution leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues. . . .'  Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted.

<u>Id.</u> at 690; <u>accord</u>, <u>e.g.</u>, <u>Rosario v. Attorney Gen.</u>, No. 00 Civ. 6681, 2001 WL 267641, at *12 (S.D.N.Y. Mar. 19, 2001); <u>Gillette</u>, 76 F. Supp. 2d at 373.

"It is the materiality of the excluded evidence to the presentation of the defense that determines whether a defendant has been deprived of a fundamentally fair trial." Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988); accord, e.g., Rock v. Arkansas, 483 U.S. 44, 52 (1987). However, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where [the] petitioner can show that the error deprived [him] of a fundamentally fair trial." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983).

This court cannot say that the exclusion of Hamilton's videotaped statement denied Myers a meaningful opportunity to present a complete defense. As an initial matter, the videotaped statements constituted inadmissible hearsay under state evidentiary rules, as petitioner sought to admit them for the truth of the matters asserted therein, and no exception to the hearsay rule applied.[12]  See People v. Esquilin, 616 N.Y.S.2d 364, 365 (1st Dep't 1994) (exculpatory

---

[12]  Petitioner argues that the court's evidentiary ruling was incorrect because Hamilton's videotaped statement was admissible as a declaration against penal interest. In order for evidence to be admissible under this exception, New York law requires the proponent to satisfy four requirements:

> (1) the declarant must be unavailable to testify by reason of death, absence from the jurisdiction, or refusal to testify on constitutional grounds; (2) the declarant must be aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability.

People v. Brensic, 509 N.E.2d 1226, 1228 (N.Y. 1987). As respondent correctly argued on appeal, Myers could not demonstrate that Hamilton was aware that his statement was against his penal interest, as Hamilton made the statement in an attempt to absolve himself of criminal liability. (See Respondent's Appellate Division Brief, dated Oct. 21, 2002, at 59-60, and cases cited therein.) Regardless, for the reasons explained infra, any error in this ruling was harmless.

videotaped statement to prosecutor held inadmissible) (citing <u>People v. Reynoso</u>, 534 N.E.2d 30 (N.Y. 1988)).

More importantly, petitioner fails the strict standard for overturning a state court's evidentiary ruling. Even if the court incorrectly precluded the evidence petitioner sought to introduce, it is unlikely that the evidence would have created a reasonable doubt or materially affected the case. <u>See</u> <u>Brecht</u>, 507 U.S. at 637-38 (explaining that in 28 U.S.C. § 2254 proceedings, a federal court must assess whether constitutional error in a state court criminal trial had a "substantial and injurious effect"); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007) (clarifying that the <u>Brecht</u> standard applies under AEDPA). First, the jury heard testimony concerning the original seating arrangements in the car. Detective Cerminello described Myers's statement to the police, in which he explained that he had been sitting in the front seat, next to Green, and Hamilton had been sitting in the back as the three drove around the neighborhood. (<u>See</u> Tr. at 764.) In his summation, Myers's counsel emphasized the seating arrangements in his attempt to persuade the jury that only Hamilton was in a position to strangle the victim from behind. (Tr. at 902-03.) But even if it could be proved conclusively that Hamilton was sitting behind the decedent at some point, that would not have altered the People's theory or Myers's defense. The People could still have argued that Myers committed or participated in the murder, and Myers could still have argued that he had exited the car, leaving Hamilton and Green alone in the passenger compartment when the murder took place. Either way, the previous seating arrangements would have little, if any, relevance.[13]

---

[13] In fact, as defense counsel noted at side bar (<u>see</u> Tr. at 250-51), parts of Hamilton's videotaped statement would have worked to Myers's disadvantage.

Second, Hamilton's admission to cutting the seatbelts was before the jury. In his summation, Myers's counsel referred to that admission repeatedly (see Tr. at 893-94, 903, 923, 925) to support his theory that petitioner had no intent to commit murder or robbery, and in fact was unaware that the murder was taking place until after its conclusion. The prosecution also noted Hamilton's admission to cutting the seatbelts (Tr. at 968) and argued that, although the evidence did not fully demonstrate whether it was Myers or Hamilton who had killed the decedent, it did demonstrate beyond a reasonable doubt that the two men had acted in concert to commit the murder. (Tr. at 5, 23-24, 941-42, 1026-28.) The videotape of Hamilton's statement would not have fundamentally altered Myers's counsel's argument or the People's case. Thus, any potential error was harmless.

In short, this court is not persuaded that the videotape would have changed the outcome of this case. I therefore recommend that this claim be denied.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the petition for habeas corpus be denied. Objections to this report and recommendation must be filed within ten (10) days, with a courtesy copy to Judge Korman and to my chambers, in order to preserve appellate review. <u>See</u> 28 U.S.C. § 636(b)(1).

Respectfully submitted,

/s/

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
June 29, 2009